The United States Court of Appeals for the Ninth Circuit is now in session. Good morning and welcome to the Browning Courthouse here in San Francisco. This is the time set for the case of United States of America v. Jonathan Edward Charles Anderson. If the parties are ready, then lawyers may come forward. Good morning, Your Honors. Your Honors, I'd like to frame today's discussion by starting with the fundamental principles that the Supreme Court relied on when it established the inventory search exception, namely that it is an exception to the warrant requirement permitting officers to enter into a vehicle and inventory its contents when impounding it because of their within the vehicle, to ensure the Department against any claims of lost or stolen items, and to guard themselves against any dangers contained within the vehicle. The Supreme Court has also held that such administrative searches should not be used as a pretext to rummage for criminal evidence, and as such, that officers should conduct such searches only pursuant to local policies and procedures. Now, I believe this Circuit undermined these basic principles in Goray when it found that the officer's failure to create a written inventory was not a material deviation from local policy such that it invalidated the so-called inventory search. So, Counsel, you assert that officers failed to produce an inventory. Is this a factual determination or a legal conclusion, and what standard of review governs our review of this issue? So, Your Honor, I don't believe the District Court made any kind of factual determination with respect to whether or not the officer's failure to complete a written inventory was significant. In fact, the District Court, I believe, thought it was irrelevant to the analysis of whether or not the search here was valid. So I think that this is on de novo review here, where this Court has to determine in the first instance what the implication is of the officer's failure to create a written inventory. Do you contend that a substantial failure to comply with the Department's inventory search policy may, in and of itself, convert an inventory search into an investigatory search, or is it the failure to comply, regardless of its severity, only a factor determining whether the officer conducted an inventory search? So it's my contention that the failure to complete a written inventory in and of itself invalidates a search because it demonstrates that there's no administrative purpose and no administrative motive. So any little, if you leave out that there was a paperclip on the floor in the inventory search, then that right there would invalidate it and turn it into? No, Your Honor. I think at that point, the burden shifts to the government, who, again, has the burden of proving that an exception to the warrant requirement applies to show that the deviation from local policy didn't actually contravene the underlying principles behind the inventory search. So that's the question. What is the point at which the burden flips? Where do we draw the line? It seems to me it's sort of a spectrum, right? So where would you tell us to draw the line? Once a defendant raises the specter of the officer's failure to comply with local policies and procedure, I think at that point the burden flips to the government to demonstrate either substantial compliance with the purposes behind the inventory search exception or good faith. So what I'm trying to get at is when you get into substantial compliance, what is substantial compliance? Judge Callahan asked you about the omitted paperclip. Judge Forrest talked about you don't have to include the gum wrapper. Where would you draw the line? Right, and I think substantial compliance, again, has to go back to these fundamental principles. If the officer's compliance with the inventory search ultimately comports with these underlying principles such that they did make the effort to protect the property contained within the vehicle in some manner. But, counsel, isn't substantial compliance kind of a red herring in this case? Because in this case there was no compliance. Wasn't that the case? I look at the record, the vehicle report, the CHP 180, and when I look at that, there is no compliance. Is there? No. That's not correct. I mean, there's a whole form that's filled out. There's condition of the vehicle, a tow truck driver was called. There's an entire form that was filled out and photographs that were taken. So there was some degree of compliance. I think Judge Christin has hit the exact issue here, which is to what extent does something more need to be done? And what more were they supposed to do here in your view? Well, Your Honor, I actually disagree that there was any compliance here. Again, the Supreme Court has held that there was. I don't see how you can say that when there's a form that's filled out that lists all this information and when there's photographs attached to it. So I don't think that's a tenable argument. I think the argument is they did not do enough. And I think I return to Judge Christin's question, which is what more should they have done? Well, you know, the Supreme Court has stated that they need to comply with the part of the inventory policy that relates to creating an inventory, right? And so the tow truck driver's signature has nothing to do with the process of this. Counsel, don't tell us what they don't. If you could just focus on Judge Bress's question. What did they need to do? That's what would really help me if I could get you to tell me. What the officers in this context needed to do. Right. So they didn't do nothing, right? They didn't do nothing, as Judge Bress indicates. There's a form. It's partially filled out. At least the gun is inventoried, right? And so your argument, and I'm not trying to give you a hard time, but your argument is they needed to do more. I'm trying to figure out how much more and whether, I mean, if you want to address, that's fine with me. You've also been asked the question of is this the right case where we need to draw the line. But I'm not sure what your answer to those questions really is. I'm not hearing that. Okay. Let me try to rephrase. I think where there are such minor deviations, as Judge Callahan pointed out, of a paperclip, or where the compliance is somewhat still not the right answer. We get that part. You've made that clear. I'm not trying to give you a hard time. So let me ask you, I asked a compound question. Do you think this is the case where we need to decide that? Yes, Your Honor, because where there is actually no compliance with the actual purposes of creating an inventory. Okay. You're doing it again. There's some compliance here. My hypothetical posits that there's some compliance. There's not no form. There's a form. It's partially filled out, right? It's the inventory to gun. And your clear position is that's not enough. Okay. So I get that. My question, and then I'll stop asking because I'm not trying to ruin your day. I'm really trying to get at, do you think this is the case where we have to decide? Or are you advocating that whatever it is, whatever substantial compliance this isn't, whatever substantial compliance is, this isn't it? Is that your position today? Yes. This case definitely is not an example of substantial compliance. Okay. Why not? Because they didn't actually make any record of what was contained in the vehicle outside of the contraband. They took photos. So I'm looking at the photos. There's a can of Dr. Pepper, a lint remover, a box of tampons, a wire. So what if they had just listed that on the form? Would that have been enough? If they had actually created that written inventory to include, also there's other items beyond that. There was a speaker. There was tools. There was sunglasses. There was cologne. There was an expensive watch. So it wasn't just, again, that's why those photographs are an insufficient inventory. So hold on. Let's back up. Why? Is that because you consider those to be items of value? Because I think they're items of value. Well, they're personal property contained in the vehicle, which the Department of Inventory. Wait, wait, wait, wait, wait. Does that mean that you think that all of the personal property contained in the vehicle had to be inventoried? Or is it items of value? You're baking them together there. Your Honor, I think based on this Department's policy, which said any personal property had to be inventoried, yes. All of it had to be inventoried. And I think the line drawing has to be left up to those local department policies about, you know, there are policies that I've read in the course of preparing for this argument where departments clarify only items over a certain monetary value or only items and leave it up to the officers. But the police setting rules for inventory doesn't define the scope of the Fourth Amendment. What we're trying to understand here, was there a pretext to do an improper search of the vehicle? I don't see what a police policy has to do with this, that the police say, well, we'll log everything that appears to have value more than $50 or $75. That doesn't matter. Your Honor, I understand the argument that local policy shouldn't define constitutional rights. Of course, the Constitution defines them. But I think federal law here and the Supreme Court has held that local policy is highly relevant in determining whether or not there was a pretext. So an officer's failure to comply with what the local policy is demonstrates that they acted in bad faith or without an administrative purpose. Can I ask a question about, let's say somebody's going out to do an inventory search and everything, and they actually, they talk, they turn to their partner and are like, hey, I'm going out to do an inventory search. I'm going to sign an affidavit, and I'm actually going out to do an inventory search, and I'm going to follow all the rules and everything. And they open the door, and a dead body falls out, and there's a dirty bomb behind the dead body. And so, as you can imagine, everything goes crazy, and they end up not doing the inventory search. But, you know, we think maybe they didn't do the inventory search because they were too busy trying to figure out how to deactivate the dirty bomb. So in a situation like that, it seems to me your rule that they have to do the inventory search, otherwise the dirty bomb's not admissible, that doesn't seem to make a lot of sense, because, I mean, I think we would assume that they planned to do an inventory search, but it kind of got interrupted by the fact that they found contraband. Do you think an example I just gave, the kind of crazy example, would the dirty bomb not be admissible because we think that, like, they weren't actually going to do an inventory search? So in a case like that, when I think the burden then shifts to the government, once the defendant proved that they didn't comply with the inventory requirements, the burden would then shift to the government to demonstrate that the circumstances surrounding that search, finding the bomb, vitiated the officer's need to complete the inventory. And I think that there's cases. But would you agree that, like, just generally speaking, it would be kind of understandable that when you find this, it could interrupt the inventory. In other words, the officers might have had actual intent to do an inventory search, but the fact that they found contraband sort of interrupted that because then they go into, like, investigatory mode, et cetera, right? And if you agree to that, I think you have to agree to that, then how is it that the fact that you didn't complete the inventory search when you find contraband, how is that evidence that they had pretext, that they had an impermissible purpose in the beginning? Because it demonstrates that they didn't have – if they didn't complete an inventory in the circumstances under this case, where there was no such exigency as a bomb contained within the vehicle that they then had to deal with. But they did find a firearm, and I think, you know, I think it's – I was using an extreme example, but it still seems like officers go in, they're going to inventory something. If everything goes right, they end up just filling out the inventory sheet and sending it in, and it's kind of a boring evening for them. But if they find contraband, suddenly it turned into a whole different mode, and it just seems to me like that ordinary human experience would be that they may forget to do the – to complete the inventory search, and they go in to do it. But, you know, if they found a dead body, you know, you could imagine that you might just forget – you're trying to figure out what's going on here, and you just end up forgetting to do the inventory search. So why is the fact that the inventory search doesn't get completed when they find contraband, and somehow evidence that they had an impermissible motive to begin with? Again, because it doesn't – it means that they weren't entering into the vehicle with any of the purposes behind the inventory search exception. And I say that, Your Honor, while also acknowledging that there are circumstances that, again, might excuse the officer's failure to comply. So a dirty bomb might, but a gun does not. The gun was removed from the car, and the officer, Deputy Peterson, took it to the police station, and Deputy Shuler stated that he conducted an inventory search subsequent to that. And the inventory search didn't – and did not actually do an inventory. You know, he compiled no written list of what was contained in the vehicle. The photographs, as they stated in their police reports, were created for evidentiary purposes, not for inventory purposes. And, Counsel, aren't we also looking at this from the context of the totality of the circumstances here? When we look at the transcript of the incidents that happened, wasn't part of the circumstances here where the officers caught on tape saying, specifically Deputy Shuler, before they find the gun, saying to Mr. Anderson, Lot of fucking money, dude. This is before they are looking inside the gun. At some later point, before they start searching the vehicle, Deputy Shuler is saying, What's up with the gloves, dude? Aren't those facts – in other words, aren't the surrounding circumstances and the surrounding things things that we should consider in determining that very question about pretext? Yes, Your Honor, and I think there's ample evidence in this record to demonstrate that the officers had a pretextual motive. For instance, when they stated to Mr. Anderson that we're going to inventory your car because you don't have a valid license, that actually wasn't permissible under the state statute that the government cited in support. Driving on an expired license, the officers would have to have determined that the license hadn't expired within 30 days preceding before they would be allowed to impound it, and they made no such determination. So they weren't even, under state statutory authority, allowed to impound the vehicle at that point based on the facts that they knew at the time. So their statement that they were there to inventory the car was clearly pretextual. So when did the license expire? There's no evidence in the record about that, Your Honor. Your client told them his license was expired, right? But he never stated at what time, and the dispatch officer on 3ER317 merely reports that it's an expired CDL out of Apple Valley and never indicates when it expired. And under 14607.6C2, again, the government cites C1 in support of their contention that the officers had the right to impound the car, but C2 states that they actually cannot impound the car if the license had expired. No, Your Honor, I don't think we did. Because, I mean, the rule of law in the Ninth Circuit was that even under state statutory authority, you still needed a community caretaking reason to impound the car anyway. And so it seemed almost irrelevant. But the government has relied on 14607.6, and I do think it is important to demonstrate that under C2, I mean, because I think it's even more demonstrative of the officers' bad faith and their pretext here that they actually couldn't even impound the car based on the circumstances and the facts that they knew at the time. Counsel, I'm wondering, under the policy 3.566.10, it says to complete two 180 forms, including an inventory of any personal property contained within the vehicle. Was there any testimony or evidence in the hearing about whether photographs would satisfy that requirement, whether there would be an inventory? Right. There was testimony during the suppression hearing. The officer stated that they were not under the impression that photographs could satisfy and that it did not say that anywhere in the policy. Well, I know it doesn't say photographs. That's why I was reading the policy. Was there any evidence saying that they understood that photographs did not equal an inventory? I believe when asked in cross-examination during the suppression hearing, and I can find the exact ER citation for you when I sit down, they stated that photographs were not an inventory under their local policy. But even if you looked at those photographs, could you see, for example, the two sunglasses? There's a box of Ray-Bans there, but is anywhere in any of the photographs that were taken, for example, those two sunglasses, expensive sunglasses that were in that vehicle? No, Your Honor. And the photographs weren't even a complete – didn't even photograph the bed of the truck. They didn't photograph the glove compartment, the center console. So they weren't even a complete picture of the entirety of the inside of the truck. But the question here is not how good a photograph you take with a phone at the middle of the night when you impound a car. The question is, was there pretext under the Fourth Amendment? And so I find it very difficult to make these judgments to say, we're going to look at these photos years after the fact and conclude that because they weren't particularly good photos that all of a sudden there's a Fourth Amendment violation.  Your Honor, I think the record here demonstrates that they were taken for evidentiary purposes and not for inventory purposes. In the police report – I don't understand why that's relevant because, again, the question here is, was there pretext for the inventory search? When somebody takes a photograph of the interior of a vehicle, multiple photographs of the belongings, that suggests that there's not pretext because they're recording the things that were in the vehicle. If the photographs were taken, as they admitted in the police report, to demonstrate where the gun was located, then they are being taken for evidentiary purposes and not for inventory purposes. And I think that's on police report 3ER390 where they state that the photographs were taken where the gun was located and where the license plate was obstructed and that those photographs were then booked into evidence. Counsel, what would they have had to do to substantially comply with the policy, in your view? To make a written list of the contents of the car that weren't contraband. All of the car contents? Yes, because the department policy required that. And if they had done that, would that have resolved? I mean, you're talking about other evidence of pretext, including the statements from the officers, and we're talking about getting to the motive, and you cited a list of things that would indicate a motive of pretext. Why would mere compliance with the inventory policy somehow erase the other, I think, what you explained, evidence of pretext that exists in this case? I mean, would that be enough by itself? No, Your Honor. So I do think that the government has the burden of proving both substantial compliance and good faith, and I think there are cases, for instance, United States v. Orozco, where the officers actually did technically comply with an administrative policy, but all of the surrounding evidence of the search of that truck demonstrated that their actual intent was investigatory. And so this circuit in that case invalidated that search. So I think there are examples of where, even though the officers are substantially complying with the local policy, other evidence can demonstrate that they actually had an investigatory motive and that it was their sole motive, because they do understand that the law's dual motive is still acceptable. And so, at least in your view, as I understand your argument, they didn't come close to inventorying a list of property in the truck, and the photographs don't establish as a backup that sort of inventorying purpose because if it's correct that several items of value were not captured in the photographs, I tend to agree that I don't know whether it really matters what the purpose for the photographs being taken, so much as the fact that if the photographs are the backup to the list, it's not capturing it, and the policy doesn't seem to suggest that the photographs could be a form of inventorying. And so it just seems to, at least to me, start to take away the legs of the stool for the officers to claim that there was not an investigatory motive behind searching the truck. Yes, Your Honor, and I would also like to point to a case, the United States v. Johnson, coming out of this court, where the court did state that where the officers remove all of the items for purely evidentiary purposes, that that is a strong indicator that they didn't have an investigatory motive. So the fact that the photographs were taken for evidentiary purposes, I think, demonstrates a strong motive. I mean, demonstrates that the officers did not have an administrative motive when they took those photographs. So during the hearing, I just read through the transcript, on several occasions the officer says he took the photographs for two purposes, one of which was to inventory. And he's asked about whether or not the photographs, in fact, the policy says photographs are inventory, and it's agreed it's not in the policy, but he thought it was. If that's the case, and the district court makes factual findings here, if we conclude that the officers thought they complied with the policy, under good faith principles, why doesn't that end this case in terms of suppression? So, Your Honor, the officers' testimony at the suppression hearing, that they thought the photographs were compliant with their department policy, seemed to be an after-the-fact justification. And it's the exact sort of after-the-fact pretextual justification that I think the Supreme Court was trying to guard against when they sort of narrowly construed the purposes behind the inventory search exception. But, again, the district court didn't find that. The district court actually found nothing with respect to what the inventory itself, their compliance with the inventory policy demonstrated. Well, if the district court had believed that it was pretextual, the district court would have granted your motion there, correct? So, what you're saying, there's no specific finding, but isn't the finding inherent to the ruling? Because if I granted a motion to suppress based on that it wasn't an inventory search under these circumstances, I think it would be inherent to my finding that it was pretextual. Except here, Your Honor, the district court actually disavowed that the way that the officers conducted the inventory was relevant. It interrupted counsel while they were examining the officers about these exact points and said, I don't see why this is relevant. It has nothing to do with this. And so I think there's nothing here for this court to defer to because the district court didn't really think that that analysis mattered, so it's not inherent in its ruling. Its ruling really was premised on the idea that it believed that the officers had spoken to the homeowner before it entered the vehicle, and that was it. But again, if the officers thought that the photographs complied with the policy, why would we suppress in this case under good faith principles? Your Honor, I don't think it demonstrates good faith. I understand, but I'm asking you as a legal matter. If the officers thought that the photographs complied with the policy, what would be our ground to suppress? That the photographs don't still comply with the policy. So good faith would not apply in this situation? No, when the photographs, again, are an incomplete inventory and there is no record of the contents of the vehicle. No, I understand. Again, I'm saying if the officers thought that it did under good faith principles, we normally don't suppress if officers had good faith that their actions were lawful. You're saying here that we should not apply good faith principles to this search? Not in this context when there is such a complete failure. Counsel, I have a question about the sequence of events because there's quite a bit of ink devoted to the sequence of events and the timing. It seems to me, and I'm going to ask this for both lawyers, but if I'm understanding the briefing correctly, it seems to me that under the officer's version of events, Officer Shuler responded to Mr. Anderson's questions about why they were going to search his truck by saying, and this is my paraphrase, you don't have a valid license, we're going to tow your truck, this is an inventory. My question is, that statement, is it your understanding that Officer Shuler made that statement before, by the officer's version of events, before anybody approached the homeowner? Yes, Your Honor. Thank you. Following up on that, as I understand it, there was a very brief span of time between all these events taking place and at least Judge Lee's partial dissent seemed to suggest that the police would have had to have searched the vehicle, found the gun, taken the photographs, and spoken to the neighbor within a span of 2 minutes and 10 seconds thereabouts, between the time that it was called into the dispatch. I take it that, is that, even though that sequence tends to relate to the community caretaker doctrine, should that also figure into our analysis of pretext for the inventory search? Yes, in particular whether or not the officers were acting in bad faith and had an investigatory motive, because the officers were in the car moments after, you know, they learned from dispatch that he was a career criminal, and their stated motive for inventory in the car was not permissible under state statutory authority, and they hadn't spoken to the homeowner before they entered the car. Would that weigh in at all to Judge Owen's question about good faith? I mean, if we're considering an officer's testimony about good faith, should we consider or raise a question about, you know, the veracity or anything to do with the explanations being given by the officers? Yes, because although the district court found that the officers had spoken to the homeowner beforehand, I think that finding should be reviewed for clear error and that it was clearly erroneous because of all of this evidence demonstrating the officers actually were not telling the truth about when they spoke to the homeowner. What's the remedy for that? I mean, again, that remedy, I think, would be suppression. What's your authority for that? I think it's Cervantes and Caceres. And so you wouldn't get to the inventory search? No. So you would want us to make the factual findings here? Well, again, I think that it would have to because I think the district court's factual finding in that context, which is subject to clear error review, is clearly erroneous. It's implausible that the officers could have spoken to the homeowner. But we give special deference to the district court judges when it comes to credibility findings. Is this a credibility finding in your view? Or is there extrinsic evidence in the record to contradict the district court's finding here? So, again, I think sort of the unassailable recorded evidence based on the officers' belt recording and the dispatch logs is, you know, extrinsic evidence that demonstrates that the officers in this context were lying. I think your version of events bakes in some pretty serious skepticism that depends upon the homeowner's version of events of how long he thought he talked to the officers. So I'm just going to tell you I'm troubled by that because I think this is a clearly erroneous standard and that, as I understand the record, that man was roused from sleep at 2 o'clock in the morning, opened his door and saw a fully uniformed police officer facing him. So I can imagine that exchange between the homeowner and the police officer seeming like it took longer to the person who was just roused from sleep, particularly because he didn't really have a reason to be noting how long the interaction took place. You're not going to be back in the conference room when we conference this case. So I'd like you to tell me what is your best response to that. Why should I put so much weight in the homeowner's estimation of that time? Because it's corroborated by the belt recordings and the police reports in this case. Much of the testimony that happened was actually corroborated by the actual police reports. The sequence of events in the police reports kind of indicates that they also were searching the car before they actually spoke to the homeowner. Right. I think I've gone over it really carefully, and so to sort of zoom in, if you could, for me, I think you're, and absolutely correct me if I'm wrong, I know this is important to your client, but it seems to me that your timeline bakes in an interval, and really pretty dependent upon an interval, of how long the police officer was talking to the homeowner. Is that fair? Yes. Or could have spoken to the homeowner because I apologize, Your Honor. No, that's right. And I understood that what you were relying on in part is that this was implausible, the officer's story was implausible because the homeowner estimated that he talked to the officer for a much longer period of time than you think was available. So it seems to me it depends upon your reconstruction of the timeline, depends upon how long the homeowner says he talked to the officer. So it actually doesn't, Your Honor, because the first part of my contention is that they were already searching the truck at the point in the audio recording where my client is protesting to them searching the truck. But the district court finds that the officer did talk to the homeowner before the search, right? Yes. So we've got to deal with that. Yes, and again, under clear error standard, if that finding was implausible, then it could still be overturned. Okay, so circle back, and you just said your contention is that the search had already started. So I think that's why you heard Judge Callahan and I both perked up. What's the basis for that? My client stating on the record, why can you search my truck? Okay, so that goes back to Chief Judge McGeeh's point, which is he had that testimony. The trial court had that testimony, and why wouldn't we say we give a lot of deference to the credibility finding? And I think you've got a clear error standard. Correct me if you think I'm wrong about that, but how do you get over that? I think that it's highly implausible if Deputy Shuler was heard on the belt recording the entire time up to the point where my client says, Why can you search my truck? It's clear from that unassailable recorded evidence that Deputy Shuler at no point stopped to go speak to the homeowner. For that entire span of time, he was heard on the belt recording speaking to Mr. Anderson. Okay, and you think your contention is that the search started, and the evidence of that I think is your client's testimony. Not my client's testimony. The audio recording where my client says. Forgive me. Your client says, Why can you search? Yes, Your Honor. But I thought he started saying that when the officer, I'll go back and look, but didn't he start protesting when the officer went to pick up the keys from the lawn? So, again, Your Honor, that doesn't, I mean, I think even the district court at one point, or sorry, yeah, the district court at one point found that that sort of was a little incredible of a statement because what person would contest to an individual, to an officer searching their truck simply because they're picking up the keys? I'm not sure that those two things equate. So, it's my contention that my client would only be protesting to the search of his truck if it was ongoing at the time. I see. Thank you for clarifying your position. Thank you. I'm way over time. I'll give you a couple minutes for rebuttal, but let's go ahead and hear from your colleague across the aisle, Mr. Friedman. Good morning, Your Honors. David Friedman of the United States. May it please the Court, I want to also start with the legal standard. Our view is that the relevant question here is whether the officer is acting in bad faith or for the sole purpose of finding evidence of a crime, and that is the standard laid out in Colorado v. Bertine. It's the standard this Court has applied in previous cases. It's the standard that every other court of appeals has applied, and we certainly agree that the failure to comply with the local policy, the failure to complete an inventory is relevant. To the extent it can be evidence of pretext, and it can be persuasive evidence and pretext in some cases, but it's not dispositive. And at the outset, I want to clarify that to the extent this Court sort of went maybe too far in the other direction in Garay, and then Garay suggested that the failure to prepare an inventory is simply irrelevant in this context, that it's always sort of a minor noncompliance with policy. You know, we don't agree with that, and to the extent judges have said it's a factor just not to be considered, I think that is wrong. But courts do need to consider the totality of the circumstances, and it should not be just—the determination should not be based just on whether policies were followed because policies do not delimit a defendant's Fourth Amendment rights. Well, Counsel, I want to jump in here and ask you a question related to this. So in the Wren case, Justice Scalia said, and I'll quote, the exemption from the need for probable cause and a warrant, which is accorded to searches made for the purpose of inventory or administrative regulation, is not accorded to searches that are not made for those purposes. So what in this record tells us that what happened here was done to serve the purposes underlying an inventory search? So there's a couple things. I think the first factor is that they did, in fact, create an imperfect inventory. We concede that the photos did not document everything, but both officers testified that the photos were the inventory, and they— But actually, as a matter of record keeping, the photos were not part of the inventory. They weren't attached to the inventory. They didn't, unlike in Gray, reference—the inventory didn't reference the photos, whereas in Gray, the inventory sheet referenced the police report that had the most complete list or the more complete list. So on my review of this record, there's the photos. They're in evidence. They're not in any way connected to the inventory, which is a separate record-keeping process. So I agree they were not referenced. It's not like Magdaria. It's different in that respect, but they did serve the same purpose in that they documented the property, and we did have testimony from the officers. And I would just reiterate, to the extent, you know, that it wasn't referenced in the CHP form 180, to the extent it wasn't explicitly contemplated by the San Bernardino policy, those are all arguments the district court can consider in deciding whether it was pretextual. But the officers did testify that was their inventory. The district court found them credible, at least in some sense. They also complied with other parts of the policy for storing a vehicle. There was no separate inventory policy in this case. It's only one part of the four-step process for storing a vehicle, and that policy as a whole protects the defendant's interest by both documenting the condition of the car inside and out. And Deputy Shuler, in particular, spent 10 to 15 minutes filling out the CHP 180 form, noting the condition of the truck. And there wouldn't have been any reason for him to take these administrative steps if it was solely a pretext. These are things you're doing to doc for administrative purposes, for community caretaking purposes. So in terms of, like, coming up with the rule of how these should work, substantial compliance is our current standard. And I think that's pretty consistent across the circuits, that minor noncompliance isn't going to show a violation. So you would say, as long as they did what was necessary for the vehicle, we shouldn't care if they didn't do anything or what was necessary for whatever might be in the vehicle in terms of personal property, even though the purpose underlying the inventory search is to protect both the vehicle and whatever personal property a person might have in there. I would not advocate for any sort of categorical rule in this context. And I would actually disagree that substantial compliance is a standard used by other circuits. Material compliance, substantial compliance, those are words I think I've only seen in Magdaria and Garay. Our view, again, is that the larger standard is whether the officers acted in bad faith for the sole purpose of investigation. And a district court can consider the totality of the circumstances. In this case, we think that the fact that they filled out the CHPU form 180, they complied with these other steps, that helps show they had a proper administrative purpose. In another case, it might be different. But, Counsel, isn't the whole point that we can infer bad faith from the surrounding circumstances that we've talked about already in this hearing, including the timeline that this is set out, the two minutes that transpired, where all of these things happened, where the officer supposedly spoke to Mr. Anderson, then went and spoke to the homeowner, then after speaking to the homeowner, went into the truck, then found the gun, and then called that in, all in the span of two minutes and ten seconds. Is that, do I have that right? That is correct. And that's an argument that was presented to the district court, and the district court heard testimony from both the homeowner and the officers, and it judged their credibility. So, I agree with your first point. You can consider all of the circumstances, the comments you mentioned that the officers made, the timeline, that can all be evidence of pretext, but that's, it's not a matter for this court to decide in the first instance. This is one of the rare areas where we need to look at the subjective intent of the officers. That's very rare in the Fourth Amendment. The district court got the opportunity to hear from them, and it determined that. But don't we have to have, at this point, a definite and firm conviction that the district court's ruling was not implausible or impossible? Yes. Our view would be that we review for clear error. Right. And so, when you put the timeline and you see the transcript from the tape, the log of the officers that they had, is that, the question is, should we have a firm conviction that that was not, you know, that that was not implausible? Because it seems, calling into question the plausibility. Our view is the panel correctly found it was plausible. It was 2 minutes and 10 seconds. I recognize that's a short period of time. On one of them, if you look at the other one, it's 1 minute and 14 seconds. 1 minute and 14 seconds? Right. If you look, I think, on the 2 minutes and 10 seconds is what the panel decided on, but there was, if you compare it to the other officers' log, it could have been as less as 1 minute. But let's just say 2 minutes. Is that really plausible? I do think it's plausible. You know, Deputy Peterson was speaking to the defendant, or Deputy Shuler was speaking to the defendant in his driveway. You know, the front door was a short walk away. This would have been a very quick conversation. Is this some, you know, is this, do you know this person? And then the gun was found in the front seat. But you follow the transcript, and the transcript has both of them talking one after the other to Mr. Anderson. All of that is happening one after the other, one after the other. And then somehow, during that time, during those 2 minutes and 10 seconds, they're also going over and then talking to the homeowner. All of that is happening? Well, at some point, Deputy Peters, or Deputy Shuler stops being heard on the belt recording, and then Deputy Peterson takes the defendant over to the car. So I think the question is whether in 2 minutes and 10 seconds, Deputy Shuler could have gone to the door, given the thumbs up, and then Deputy Peterson could have looked in the car. And again, it's very— I counted 12 steps. Officer Shuler stops talking to Anderson. Shuler walks over to the homeowner door. Shuler knocks on the door. Homeowner wakes up. Homeowner walks from his bedroom to the door. The homeowner opens the door. Shuler asks the homeowner if he knows Anderson. The homeowner says no, and then he wants Anderson's truck removed. Officer Shuler informs Peterson that the homeowner wants Anderson's truck gone. Officer Peters searches Anderson's truck. Officer Peterson finds the gun. Officer Peterson calls dispatch with the serial number of the gun. All those 12 steps had to happen in 2 minutes and 10 seconds. And I understand we give special deference on credibility issues, but this is extrinsic evidence, it seems like, that we compare the district court's— evaluating the district court's finding, and I just— I'm not sure I have a definite and firm conviction that it wasn't implausible. Well, you know, I think the standard's even higher because you have the witnesses testifying and their credibility, but, you know, we do think— I understand breaking into steps, it seems like a lot of things, but it's walking to a front door that's a few feet away, having the homeowner get up, having him ask if this is a stranger in your driveway, and then doing the search, which is, again, the gun was found in basically the first place you'd look under the driver's seat. What do we do with the fact that if we're looking at the totality of the circumstances, that if we accept Officer Shuler's version of events about when he went, you know, stopped talking on the belt audio and went to the homeowner, that prior to that time he said, in response to the question about why they were allowed to search his truck, that you don't have a license, this is an inventory. We're going to tell your truck this is an inventory. Those words were said, according to Officer Shuler, before he went to the homeowner. What should we do with that here? My view is that helps show his good faith. It's similar to Magdaria, in which the officers told the defendant before they found something that they were going to conduct an immiseration. This is before they know that that's not his friend who owns that house. Yes. Well, so I think even at that point they at least had some level of suspicion that that was not, the defendant was not at a friend's house. And there are at least two things that support that. One is, given that defendant, I know this is disputed, tried to evade the officers, at least didn't stop immediately. And the second is, this is a point actually that Judge Forrest made at the panel argument, towards the end of the interaction when the defendant is being placed in the patrol car, he said, can I have a friend come pick up the car? Right. And if he had been at a friend's house, that comment wouldn't have made any sense. Who's got the burden to show this? Who's got the burden to show whether this is good faith? So, I will admit the case law is a bit unclear on this. Bertine suggests, it says there was no showing that the police were acting in bad faith. And Johnson is actually phrased in similar phrasing. It says that the defendant has to adduce evidence of pretext. I think we understand that we have the burden to show there was an exception to warrant requirement. Right. So, we at least have some preliminary burden to show there was an inventory search. But there is, you know, this court has suggested in Johnson, and actually an older case of Roscoe, which Johnson was based on, that the defendant has to show pretext. The defendant has to show that the search wouldn't have happened. Well, you're relying on, we've got a search. We don't have a warrant, right? You've accepted, and I think correctly so, and I appreciate that, that the government has the burden. Where do you think your burden leaves off and it flips? What's your take on the law? We would say they have, the defendant has the burden to adduce evidence that there was pretext. And, again, that's based, the language of Bertine, it says there was no showing of bad faith. And if you look at Johnson, it's similar. The court said we're going to look, you know, did the defendant adduce evidence of pretext? The defendant has to show that this search wouldn't have happened unless, this search wouldn't have happened if the defendant did not have the, if the officer did not have the proper, sorry, they have to show that the search would not have happened if the officer did not have an investigatory motive. What are you saying? You had to. Excuse me. I'm sorry. Just rest. If I could just close this up. Sure. So I think that's plausible. That might be right, and I've got this written out a couple of different ways on my notes. But if that's the case, if you could just, if that's the case, then why shouldn't I be troubled by the officer announcing before he ever went to the front door, this is going to be an inventory search? Again, because I think they had a reasonable belief at that point already the defendant was not at a friend's house. They then confirmed that, which shows further good faith. They didn't just go into the car immediately. They confirmed he was not at a friend's house. And in Magdaria, again, this was a factor the court actually said showed good faith. They didn't find something and say after the fact, well, now let's justify this search as an inventory search. They said from the beginning it was. And then they proceeded to do an inventory search in that case. But anyway, I think you've answered my question, and I stepped on Judge Bress's question. So I was going to ask a similar follow-up question, just to make sure I understand your position. Are you saying that the government has to come forward with essentially a prima facie case that this is an inventory search? You could show that in different ways. One of them could be a form that's an inventory form. And once you've established this prima facie case, then the burden shifts? Is that your argument? Correct, yes. Essentially the burden shifts. I just have a question that, well, it would help me if you could tell me, what factual findings do you believe the district court made? So when we're reviewing this, it's my view that I shouldn't be making factual determinations here. And I asked your friend across the aisle about whether there's an inherent finding that it wasn't protectural here. What does the record show from your perspective that are factual findings, and if the court were to go there, that you would say would be improper or the standard is review on that? I would like to hear your view of the record. Counsel for the defendant has already made her statements. Sure. So the district court found that the search was valid. I agree there was not a specific factual finding on whether there was pretext or bad faith. I think that's clear from pages 10 and 11 of the record. But it is inherent in the district court's finding. The district court could not have found that the search was valid without implicitly finding that there was no pretext. It's part of the standard. And it's very similar to Magdaria, in which that was a similar case in which the district court said the search was valid. It didn't specifically address pretext, and this court treated that as an implicit finding. It applied a slightly different standard.  It sounds a lot like clear error. If there's any distinction there, we think at least this court should apply the standard to Magdaria. And that's not something the defendant has really challenged up until this point. Did the district court say anything about believing the officer on any points? The district court certainly did. So at page 10 of the record, the district court started by saying there was discrepancies and inconsistencies in the testimony, but based on the credibility, it was going to affirm the search. And on the point of the timing of when the officers talked to the homeowner, it specifically said it was going to believe the officers, and it was going to believe that testimony. So there was a credibility finding, at least with that community care taking purpose for the impoundment. And we do think they're related because once the district court—once the defendant—sorry, once the officers decide to impound a car, what the Supreme Court has recognized is that in the vast majority of cases, a reasonable officer is going to want to look in the car to make sure there's not something dangerous. And this goes back to sort of the beginning of this exception. Look at Cooper v. California, Katie v. Dombrowski, which are some of the first cases on this issue. What the Supreme Court recognizes is that if officers are going to take custody of a car, they're going to impound it. They're going to give it to a tow truck driver. It's reasonable for them to want to look inside to make sure at a minimum that there's nothing dangerous in that and there's nothing dangerous in the car. And that's something— Could I just be clear about the government's position on when you think they decided to impound the car on this record? So what— Is it the thumbs up that I'm supposed to understand from their testimony? At what point did they decide to impound the car? So Deputy Peterson said he made the decision as soon as he found out the defendant didn't have a license. And then I believe they confirmed it shortly thereafter by talking. They confirmed shortly thereafter he was not at a friend's house. So in that case, would you—is your position that it's an unlawful search but not an unconstitutional search? If— If they decided to search the car when they discovered that his license had expired on that basis alone. Well, so they did not—but they didn't search the car until they confirmed it. Had they searched the car at that point, would your position be that that was an unlawful search but not an unconstitutional search? So putting aside—you know, I just mentioned that we do think they had reasonable cause to believe he wasn't at a friend's driveway already. If the court did not agree with that, then I think the way we litigated it, then it would be an unlawful search. They wouldn't—they would not have had a basis to impound the car, at least at the time they started the search. Okay. So if I'm understanding correctly—again, I'm not trying to give you a hard time either, but I am trying to understand your position. You think that—I've read that testimony, yet he—Shuler makes a statement that he made that I've asked both of you about, that this is an inventory search. We're going to tow the car, right? And yet he—and then went to the front door. So your position, I think, is even though he'd made the decision, that he got more confirmation before he actually searched? Yes. Yes. Perhaps it was a tentative decision, but they wanted to at least confirm that the defendant was not in a friend's driveway. Okay. When did the government produce the photographs that Officer Shuler took of Anderson's vehicle? When were they produced? I believe they were produced shortly after the defendant appeared. They were part of the discovery that was produced along with the police report. They were put on a CD and then filed with the police report. You think that's when it happened? That's my understanding. I don't have the specific date. It would probably be in an email somewhere. But I believe it was collected as part of the general discovery when we worked up the case and was produced at the beginning. It wasn't something that was produced after the fact. But I don't have the emails or those types of administrative records in front of me. Counsel, can I ask? At the start of your argument, you mentioned that an inventory search is a factor to consider whether a search was unreasonable or not. If the photographs wholly failed to capture much of the personal property in a car, what would we do with that? And there was no listing of personal property, no inventory search at all. In this particular case? Well, I guess I'm setting up – I'm trying to understand what your sense of the dividing line is or how to weigh such a factor if the photographs fall short in an inventory purpose. I think it would provide the defendant with more evidence of bad faith. I don't think it's ever going to be dispositive. I think there will be cases where even if there's no inventory, even if there's no photographs, the officer still had a good faith purpose for conducting the search, and that's ultimately the question. Judge Van Dyke actually gave a very good example. If you were to start an inventory search and find a bomb, that's probably going to change the character of the search. You might not fill out the inventory form, but that doesn't mean the officer's acting in bad faith. That would be a unique circumstance in which, because of something they found immediately, they ended up not filling out the form. You don't need to find bad faith, right? It's a conjunctive test. It's bad faith or your sole motive is investigation. That's how I read that statement from the case law. Do you agree? So, I agree there's an or in between the two standards, but it appears the Supreme Court has read them together. South Dakota reofferment sort of combines them and asks whether there's pretext at page 376. And I'm not aware of any courts that have drawn a distinction between bad faith or investigation. And what the Supreme Court has said, the reason this type of search is reasonable is because the officers are not rummaging for evidence. It's because they have that proper administrative purpose. And that does seem to suggest that the question is whether they were looking for evidence as opposed to acting in their community caretaking role. I don't want to circle back to paper clips and gum wrappers, but what's the government's best argument that it was that we shouldn't be troubled by the failure to inventory items of value? I think they're undisputable items of value, like the sunglasses. What do we do with that? So, I think it's a factor that can be considered. And it's just one factor among many. And there's countervailing evidence in this case. And I don't think this court should adopt a rule that makes the validity of the search hinge on the completeness of the inventory for several reasons. And these are pointed out very well by the Second Circuit in Lopez. You know, I think that's right. If I can interrupt, because I didn't make much headway with your opponent on this either. But it seems to me this just may not be the case, right? This is a case where there's really nothing else inventoried but the evidence. And it seems to me that's their strongest argument, that this was really looking for evidence. So, is this the right case to be drawing a line? We would disagree because you have the photos and you also have the other forms of compliance. I think there are going to be other cases where the officers really don't. What are the other forms of compliance? Again, with the policy for storing a vehicle, the fact that Deputy Shuler spent 10 to 15 minutes filling out the CHP 180 form, that he got the tow truck driver's signature, that he took all these administrative steps that you wouldn't do if you were just looking for evidence of a crime. And, you know, defendant has cited other cases. People will be Williams, for example, California Supreme Court case where the officers were following the defendant. They were looking for a reason to stop him once he committed a traffic violation. They started an inventory search.  Well, Counsel, in the police report itself, in the police report that Officer Peterson filled out, in the section titled Vehicle Inventory, this is what it says. It says, while conducting a vehicle inventory, I located a small gun, a handgun holster located on the passenger side floorboard, a Smith & Wesson, a 9-shill, 9-millimeter handgun and 8 cartridges inside the magazine and one cartridge inside this chamber under the driver's seat with the safety off. So I guess the purpose of the vehicle inventory was to do what in the police report? To document evidence of the crime or inventory the items that were there? So it was first, you know, again, there's this other purpose to find dangerous items, and they found a gun and removed it from the car, which is a third purpose of the inventory search that I think the defendant essentially ignores. But they both testified that they took photographs. I understand that's what the police report. Well, let me ask you this, just as part of this. Would you dispute that had the judge found it was protectural based on this record, you would be up a crick without a paddle? Probably, yes. I would agree with that. So it could have gone either way at that point, and the judge went one way, and you're arguing the evidence that supports that. But on the other hand, if the judge had gone the other way and said, you know, this was so sloppy, and all the points that my colleague is mentioning to you, the judge could have considered those, that it was so sloppy that it amounted to pretext in the judge's mind, and that would have been supported by evidence, right? Yes. But wasn't the judge's ruling focused on the caretaking part? It didn't take everything into consideration, the inventory search with the caretaking part, from my read. But I want to give you an opportunity to tell me differently. I mean, he narrowed it to the main question is up to this point, and it was just up to that point in what was going on with the homeowner, whether or not they talked to the homeowner first or not. And he didn't give much of an explanation. He just said, I'm fine that there's a, you know, under the caretaking exception, that was fine. So what do we do with that? Because he really doesn't look at the full picture. So I think the judge was responding to how the defendant framed the case. That was really defendant's focus, including at the panel level. I believe in the reply brief they called that central issue, the timing of the homeowner discussion. But these arguments were aired in front of the district court that both deputies were, you know, they were cross-examined extensively on, you know, the details of the inventory, how they typically conduct inventories. You know, the defense litigated this well. They submitted a CHP 180 form for another case that Deputy Shuler was involved in. And with respect to, you know, defense counsel's point that the district court didn't understand the standard, he did make a comment, you know, why are we spending so much time on the inventory? And at page 128, defense counsel responded and said, well, I think the failure to prepare an inventory is evidence of pretext. And the district said, okay, understood. So I do think the district court understood this argument. It was in front of him, and there was an implicit finding in the same way as in Magdaria. And we do think given the deference that is owed that finding, given the deference that is owed to the district court's credibility findings, there's sufficient evidence to support it given the imperfect inventory, the fact that they complied with the procedures, and the fact that, again, the officers in the vast majority of cases are going to want to look in the car. They're going to want to make sure there's not a bomb. They're going to want to make sure there's not dangerous chemicals, something dangerous in the car. And that really is at the core of the inventory search exception and, you know, is apart from whether there's an inventory. Oh, forgive me. Go ahead. Thank you. I have a little problem with that because it just opens the door to a warrantless search, right? If it's – I understand exigent circumstances can arise, but if the law were that an officer starts, you know, with a good faith purpose for an inventory search and happens to come across evidence and can stop, and then you've just blown a hole through the warrantless search exception, wouldn't you? I mean, that seems to go against what the Supreme Court is getting at with not wanting to have investigatory purpose. It seems to gut the sense that we should police pretextual searches, doesn't it? So I think two responses. First, you can only do an inventory search if there's a proper impoundment, and that's already a significant guard against pretextual searches. You can't just search a car and then all of a sudden say, well, now we're going to inventory it because we found evidence. There needs to be, first, that proper reason to impoundment. And second, the officer has to have a proper purpose, and the officer is not going to have a proper purpose in every case. There are going to be situations once the officer is motivated by pretext. You know, Johnson is an example where the officer filled out all of the inventories, you know, complied with all the procedures but admitted he had a pretextual purpose, and the court invalidated the search because of that. Hellman is a case from the 70s, same deal, where the officer complied with the procedures and the search was invalidated. And I think that shows that's why we should not make the test hinge on the completeness of the inventory. It's going to be both under and over-inclusive. You're going to have cases where officers have an improper purpose and they comply with all the procedures. You're going to have cases where they don't have an improper purpose and they do. And, again, I did want to direct the court to the Second Circuit's decision in Lopez and, you know, why this would be a bad policy decision to adopt a test that hinges, in particular, on the completeness of the inventory. You know, one, given the fact that it's going to be burdensome. People do have lots of things in their cars. If you look at the car in this case, there's tons of property. I don't think that's unusual. It's going to be burdensome. And you're going to result, you're going to have cases where, you know, searches, good faith searches are invalidated because failures to comply with paperwork. And the paperwork is not the reason that the search is reasonable at the end of the day. It's not compliance with local police policies. It's because they have this proper purpose, because they're acting in their community caretaking purpose. And I'm getting close to the end of my time. I'm happy to answer any other questions. What about if not verifying that the license had expired, it was over 30 days? Does that matter? I don't think that's an argument the defendant raised below. And our position is that there was a proper purpose and there was a proper reason to impound the car. I don't know if this is something the court can take judicial notice of. I think in California, your license expires on your birthday. This defendant was born in April. The search happened in November. So my guess is that's why this was not an issue that was raised. It was several months after. But it wasn't an argument that was raised below or at the panel level. Thank you. Are there any other questions? Okay. Thank you, Your Honors. Thank you. Ms. Mattei, our questions took you over time, but I'll give you two minutes. Your Honor, I just wanted to address what I may have struggled with earlier in response to Judge Christin's questions about what kind of rule this Court should adopt. And I think the kind of rule this Court should adopt stems from Florida v. Wells, where the allowance of the exercise of judgment has to have been based on concerns related to the purposes of the inventory search under the Fourth Amendment. And so, yes, there might be deviations from policy related to gum wrappers and paper clips. And I think it's up to local departments to determine what officers should be inventorying when they do inventory the contents of the vehicle. But I think, at the very least, it has to comply with the purposes behind the Fourth Amendment. And any deviation from those policies also has to comply with the purposes behind the Fourth Amendment. And where here there was a complete failure to complete an inventory search, I think it demonstrates that there was some. This is the problem. I was curious to see where you're going with this, but then you end up in the spot that you began with, which is that this is a complete failure. That, I think, is a really hard argument based on the record, right? And so I think the point you began with a second ago about the policy also runs into another problem, which is why does the Fourth Amendment turn on the niceties of a particular policy? That's not something we've ever said before. Your Honor, I think the Supreme Court has said that it's almost presumed in the idea that the officers are doing So, again, I understand that normally, under normal Fourth Amendment jurisprudence, that state law doesn't define constitutional rights. But I do think inventory searches are sort of a unique animal in our Fourth Amendment jurisprudence, where, for instance, subjective motivations matter. And I do think local policy matters. So, under your interpretation, whatever the policy is, any violation of the policy would invalidate the search. Any violation of the policy would trigger the government's burden to prove that that compliance didn't undermine the purposes behind the Fourth Amendment, behind the exception. Thank you very much. I appreciate the arguments presented by you, Ms. Motte, and you, Mr. Friedman, on this case. The case of United States of America v. Jonathan Edward Charles Anderson is now submitted, and we are adjourned. Thank you.
judges: MURGUIA, CALLAHAN, IKUTA, CHRISTEN, OWENS, BRESS, FORREST, VANDYKE, SANCHEZ, MENDOZA, DESAI